# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| TRACY M. RAY,<br><br>   Petitioner,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>   Respondent. | Case No.: 4:16-cv-00389-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Tracy M. Ray's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's decision denying her application for Social Security Disability Insurance benefits. *See generally* Pet. for Review (Docket No. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On March 8, 2013, Petitioner Tracy M. Ray filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning February 25, 2013. The application was denied on May 20, 2013 and, again, on reconsideration on September 26, 2013. On November 19, 2013, Petitioner timely filed a Request for Hearing. On February 5, 2015, Administrative Law Judge ("ALF") Lloyd E. Hartford held a video hearing from Billings, Montana. Petitioner, represented by attorney Brad D. Parkinson, appeared and testified from Idaho Falls, Idaho. Impartial vocational expert, Richard G. Taylor, also appeared and testified.

On April 1, 2015, the ALJ issued a Decision denying Petitioner's claim, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested

**MEMORANDUM DECISION AND ORDER - 1**

review from the Appeals Council and, on August 5, 2016, the Appeals Council denied Petitioner's Request for Review, making final the ALJ's decision.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing that "[t]he conclusions and findings of fact of the [Respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review, p. 2 (Docket No. 1). In particular, Petitioner argues that the ALJ erred in (1) giving improper weight to the opinion of Dr. Kelly; (2) failing to give proper weight or consideration to the medical evidence and opinions of Dr. Mary Himmler, Dr. Jason Poston, and Dr. Stephen Cheyne; (3) improperly accepting only a part of the opinion of the physical therapist who conducted a functional capacity evaluation; (4) improperly determining there was insufficient evidence that Ms. Ray is unable to pass POST Certification; and (5) failing to identify and resolve conflicts between the vocational expert testimony and the DOT. *See* Pet.'s Brief, pp. 10-15 (Docket No. 15); *see also* Resp't Brief, p. 3 (Docket No. 16) (appropriately condensing Petitioner's arguments into three issues: "(1) Whether substantial evidence supports the ALJ's assessment of the opinions of Brandon Kelly, M.D., Mary Himmler, M.D., and one of Petitioner's physical therapists; (2) Whether the ALJ's failure to mention letters from two of Petitioner's doctors [(Drs. Poston and Cheyne)] was harmless error; and (3) Whether substantial evidence supports the ALJ's finding at step five that Petitioner could perform a significant number of jobs in the national economy."). Petitioner therefore requests that the Court either reverse the ALJ's decision and find that she is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See* Pet. for Review, p. 2 (Docket No. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*,

**MEMORANDUM DECISION AND ORDER - 2**

981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

As to questions of fact, the Court's role is to review the record as a whole to determine whether it contains evidence allowing a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts within the medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving any ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence contained in the record (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

As to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. At the same time, the ALJ's

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

#### A.  Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since February 25, 2013, the alleged onset date." (AR 13).

The second step requires a determination of whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or

combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If there is no severe medically determinable impairment or combination of impairments, benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ found that Petitioner has severe impairments of degenerative disc disease, carpal tunnel syndrome (CTS), and obesity. *See* (AR 13).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 13-14).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the

job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the RFC to perform light work, except "she is limited to frequent handling, fingering, and overhead reaching bilaterally," and "she should never climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to hazards such as working at heights and all exposure to unprotected heights." (AR 14-19).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner is unable to perform any past relevant work as a correctional officer/therapy tech, but found that there are jobs that exist in significant numbers in the national economy that Petitioner can nonetheless perform, including "[security] guard." *See* (AR 19-20). Therefore, the ALJ concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from February 5, 2013, through the date of this decision." (AR 20) (internal citation omitted).

**B.      Analysis**

       1.      <u>Substantial Evidence Supports the ALJ's Assessment of the Conflicting Medical Opinions</u>[1]

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *See Magallanes*, 881 F.2d at 750. While the medical opinion of a treating physician is entitled to

---

[1] Although the regulations governing the evaluation of medical evidence were recently amended, the version effective March 27, 2017 does not apply to the present claim. *See* 20 C.F.R. §§ 404.1527, 404.1520c.

**MEMORANDUM DECISION AND ORDER - 6**

special consideration and weight, it is not necessarily conclusive. *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). If the treating physician's opinions are not contradicted by another doctor, they may be rejected only for clear and convincing reasons. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if the treating physician's opinions are contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons for doing so, supported by substantial evidence in the record. *See id.* A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinions is a sufficient reason for rejecting that opinion. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Here, Petitioner takes issue with the ALJ's acceptance of Dr. Kelly's opinions over other treating physicians' opinions (namely, Drs. Himmler, Poston, and Cheyne), while failing to accept the entirety of Petitioner's physical therapist's opinions. *See* Pet.'s Brief, pp. 10-14 (Docket No. 15). The Court addresses each of these arguments below.

    a.    Dr. Kelly

In April 2013, Dr. Kelly explained to Petitioner that, "given she does not have severe structural spine disease and that she has neuropathies that are not advanced on EMG, [he is] unable to provide a good rationale for her to be considered medically disabled." (AR 367). In support of this position, Dr. Kelly commented:

> Since I last saw Ms. Ray, she has undergone some physical therapy as well as [steroid injection]. This has helped her neck pain quite a bit. It has also helped her hand pain a little bit. She also had an EMG of her upper extremities which

> demonstrates bilateral carpal tunnel, bilateral ulnar nerve disease. This is only moderate disease. There are no denervation changes and no demyelination. There is no evidence of peripheral neuropathy. There is no evidence of radiculopathy.
>
> She saw Dr. Schmidt down at the University of Utah who felt that she is not a candidate for surgery. He felt that was because her neck disease did not warrant surgical intervention and it would be high risk to do an operation of her neck given her history of cancer and surgery and radiation to her neck.
>
> Ms. Ray repeatedly asked me to fill out forms for her to be medically retired and/or apply for disability. . . . .
>
> Ms. Ray does not have severe cervical spine disease and does not have symptomatic spine disease best I can tell. I explained to her that she has some bilateral upper extremity neuropathy findings. These are mild to moderate at this point and they have not undergone conservative care. I explained to her the need to take Aleve with breakfast and dinner and stop that if she has any GI distress. I also have written her a prescription for bilateral carpal tunnel bracing. I have also suggested she get some neoprene guards for her elbows in order to help with her ulnar neuropathy. I think that she has a good chance of succeeding with conservative care. I explained to her that the alternative to conservative care would be consideration of ulnar decompression as well as carpal tunnel release. She understands this and will take that under advisement.

(AR 367).

The ALJ found Dr. Kelly's opinions to be consistent with the objective medical findings as well as the claimant's reported activities and, thus, assigned it "significant weight." (AR 17). Petitioner criticizes the ALJ's finding in this respect, arguing that Dr. Kelly actually said: "I do not have a strong medical reason based on my *limited* workup to remove her from work." Pet.'s Brief, pp. 10-11 (Docket No. 15) (quoting (AR 343)) (emphasis added).

Petitioner is technically correct: Dr. Kelly *did say* that, owing to his "limited workup" on Petitioner, he did not have a strong medical reason to "remove her from work." *See id*. However, as Respondent points out, the statement Petitioner now references was made in March 2013 – over a month before he *later* stated in substantially certain terms (and after additional treatment and testing), that he is "unable to provide a good rationale for [Petitioner] to be

**MEMORANDUM DECISION AND ORDER - 8**

considered medically disabled." Resp't Brief, pp. 4-5 (Docket No. 16) (citing (AR 367)). Importantly, it is this second, April 2013 opinion – not the initial, March 2013 opinion – that the ALJ focused on when making his disability determination.[2]

      b.      Dr. Himmler

Dr. Kelly referred Petitioner to Dr. Himmler in March 2013 (following Petitioner's *first* appointment with Dr. Kelly). *See* (AR 343) ("[Petitioner] asked me to refer her for a functional capacity evaluation with Dr. Himmler of rehab. I will make that referral."). Dr. Himmler first saw Petitioner on April 24, 2013, and Dr. Himmler reported that:

> [Petitioner] is not able to return to her job at the Juvenile Correctional Facility as she would be at risk for further cervical spine injury and potentially increased upper extremity weakness/numbness symptoms. She is to avoid lifting/carrying greater than 10 pounds as possible, is to avoid all overhead work and climbing, and should also avoid bending/twisting, stooping, crouching, kneeling as possible. These are permanent and improvement in the patient's condition is not expected.

(AR 417). Dr. Himmler next saw Petitioner on June 14, 2013 for "follow-up of neck and back pain." (AR 410). Despite Petitioner reporting that (1) "physical therapy is going well and she has some improvement in range of motion in her neck," and (2) "[s]he . . . underwent bilateral injection for 'tennis elbow' symptoms with good results," Dr. Himmler indicated this time that:

> [Petitioner] is to avoid activities that would result in further neck injury including but not limited to lifting and carrying moderate and heavy items, looking overhead, reaching overhead, climbing ladders, avoid altercations with inmates; given her bilateral hand symptoms, [Petitioner] should avoid excessive repetitive upper extremity and hand activity. [Petitioner] has lower back symptoms as well and should avoid all activities that would exacerbate these symptoms.

---

[2] Petitioner does not take issue with the ALJ's alignment of Dr. Kelly's opinions with numerous other benign medical records and Petitioner's daily activities. *See* (AR 17) (ALJ noting that Petitioner "may have some mild pain and range of motion limitations, but that she was able to walk normally and her motor strength and sensation was normal," and that Petitioner could "maintain her home, drive, go shopping, do housework and yard work, go out with friends, care for her animals, travel, do crafts, and utilize a computer"). Both considerations are appropriate in this context. *See* 20 C.F.R. § 404.1527(c)(3), (4) (ALJ may afford more weight to opinion that is consistent with overall record and supported).

**MEMORANDUM DECISION AND ORDER - 9**

(AR 410, 412); *see also* (AR 418-420) (Dr. Himmler's assessment of Petitioner via "Patient's Restrictions and Capabilities" worksheet, referencing limitations that were consistent with Petitioner only being able to perform sedentary work).

The ALJ found Dr. Himmler's opinions to be inconsistent with her own examination findings and inconsistent as well with Petitioner's reported activities and, thus, assigned it only "little weight." (AR 17). Petitioner disagrees, arguing that "[t]he opinion of Dr. Himmler should carry substantial weight as Dr. Kelly, who did not have enough information to form an opinion on disability, referred [Petitioner] to Dr. Himmler, a specialist, to determine work capacity." Pet.'s Brief, pp. 12-13 (Docket No. 15). This is not enough. Relying exclusively upon Dr. Kelly's initial referral to Dr. Himmler to challenge the ALJ's critique of Dr. Himmler's opinions – as Petitioner does here – not only misses the larger point, but fails to consider the ALJ's actual justification for calling Dr. Himmler's opinions into question.

To begin, while it is true that Dr. Kelly made a referral for Petitioner to see Dr. Himmler, Plaintiff fails to make a logical link as to why this should be a basis to accept Dr. Himmler's opinions wholesale. This is especially the case when, after referring Petitioner to Dr. Himmler and securing additional information thereafter, Dr. Kelly supplemented his "limited workup" and arrived at his revised opinions independent of the reasons for the referral to Dr. Himmler in the first instance or, for that matter, Dr. Himmler's opinions themselves. *See supra.* In other words, Plaintiff's argument in this respect does not follow and, even if it did, does not apply.

Second, Dr. Himmler arguably contradicted herself when she opined that Petitioner could never lift/carry more than 10 pounds, yet, on examination, Dr. Himmler noted that Petitioner had nearly full motor strength in her upper extremities (with some reduction in her wrists, hands, and fingers), had intact sensation, had only mild reduction in her fine motor coordination, and

exhibited normal reflexes. *See* (AR 416).³ An ALJ may discount a doctor's opinion when it is internally inconsistent with that doctor's own findings. *See Bayliss*, 427 F.3d at 1216; *Morgan*, 169 F.3d at 601-02.

Third, Petitioner's own statements about her limitations do not neatly align with those referenced by Dr. Himmler. For example, on April 4, 2013 (approximately three weeks before Dr. Himmler restricted Petitioner to lifting/carrying no more than 10 pounds), Petitioner reported that she was able to lift "about 20 pounds, maybe 30 [pounds]." (AR 236); *see also* (AR 351) (Petitioner describing her exercise as "moderate" and her work activity as including "light" and "heavy" labor as of March 8, 2013). An ALJ may afford less weight to an opinion that is more limited than the claimant alleges. *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("There is no indication in the record what the basis for these restrictions [(by petitioner's treating physician)] might be, and [petitioner] herself has never claimed to have any problems with many of the conditions and activities that [treating physician] instructed her to avoid."). And, relatedly, Dr. Himmler's opinions concerning Petitioner's functional/postural limitations appear to be incompatible with Petitioner's activity level – Petitioner pulls weeds, uses a computer, makes crafts, cooks, plays cards/dice games, does her own housework, drives, shops, goes out and has cocktails with friends approximately two times per week, and traveled to

---

³ Additionally, it is interesting to compare Dr. Himmler's treatment notes between April and June 2013, taking into account Petitioner's apparent improvement between the two visits. *Compare* (AR 415) (4/24/13 treatment note: Cervical spine: ROM 50% of normal forward flexion, extension, bilateral rotation, 25% of lateral flexion; [Petitioner] reports pain with flexion, extension, bilateral rotation . . . . Lumbosacral spine: ROM normal flexion, 25% of normal extension, 50% of normal bilateral lateral flexion; [Petitioner] reports mild pain with flexion, reports pain with extension . . . .), *with* (AR 411) (6/14/13 treatment note: "Cervical spine: ROM 75% of normal forward flexion, limited extension, normal right rotation, 75% of normal left rotation; [Petitioner] reports no mild pain with extension . . . . Lumbosacral spine: ROM normal flexion, limited extension; [Petitioner] reports no pain with flexion, mild pain with extension."). Yet, Dr. Himmler's opinions concerning Petitioner's physical limitations remained the same between these periods.

**MEMORANDUM DECISION AND ORDER - 11**

Washington "for a weekend and stayed on the coast" post-onset date. *See* (AR 52, 62, 77, 233-35). An ALJ may discount an opinion that is inconsistent with a claimant's activities. *See Morgan*, 169 F.3d at 601-02; *Rollins*, 261 F.3d at 856.

Finally, Dr. Himmler's restricting opinions do not exist in isolation. In addition to Dr. Kelly, consultants Robert E. Vestal, M.D. and P. Michael O'Brien, M.D. opined that Petitioner was capable of light work activities with some upper extremity and postural limitations:

> Medical evidence reveals you are undergoing conservative treatment for carpal tunnel syndrome and are expected to have complete resolution of symptoms. You have low back with degeneration and left ankle pain. Evidence reveals you are able to walk, stand and move about without assistance. There is no evidence of bursitis. you have some neck degeneration and pain following radiation, but you are able to move your neck without limitation.
>
> In making our determination, we considered medical and other information, and work experience in determining how your condition affects your ability to work. Based on all the evidence, we have determined you have limitations in your ability to perform your past work related activities. However, these limitations are not severe enough to prevent you from performing other less physically demanding work in the national economy. Therefore, you claim must be denied.
>
> . . . .
>
> Review of the evidence indicates you experience elbow pain, neck and low back arthritis without spinal canal impact. Testing did not reveal radiculopathy or neuropathy but did show very mild carpal tunnel in both wrists. In exams, your muscle strength/tone, neurological functioning are normal. You can stand, walk, and use your arms/legs without assistance. Your pain is improved but not eliminated with conservative treatment measures.
>
> Your condition results in some limitations in your ability to perform work related activities. While you are not capable of performing work you have done in the past, you are able to perform work that is less demanding. We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information and work experience in determining how your condition affects your ability to work.

(AR 107, 122); *see also* (AR 18) (ALJ assigning Drs. Vestal and O'Brien "great weight" because their conclusions "considered findings that [Petitioner] had some limited range of motion in her neck and back and mild carpal tunnel syndrome"; "were consistent with the objective medical findings that [Petitioner's] gait, station, and coordination was normal, her upper and lower

**MEMORANDUM DECISION AND ORDER - 12**

extremity muscle tone and strength was normal and her reflexes and sensation were normal"; and "were also consistent with [Petitioner's] reported activities.").

To be clear, there is no challenge here to the fact that Petitioner has a multitude of issues surrounding her back pain and carpel tunnel syndrome (acknowledged as severe by the ALJ); rather, the focus is upon the lack of corroboration in the medical record (including Dr. Himmler's own treatment notes) to the substantial physical limitations Dr. Himmler highlights. The Court agrees with the ALJ that Dr. Himmler's opinions as to the Petitioner's allegedly severe limitations are not supported by the evidence of record, and finds that the ALJ's decision to discount and give little weight to such opinions is supported by clear and convincing, specific, and legitimate reasons for doing so. The Court is not conclusively finding Petitioner not to be disabled under the applicable rules and regulations – Petitioner appropriately identifies conflicting evidence in support of her position. Such evidence was not as favorably received as Petitioner naturally hoped, but the ALJ's decision to question Dr. Himmler's disability opinion contains appropriate reasons for doing so. As required by controlling law, the ALJ will not be second-guessed in this respect. *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

    c.    *Drs. Poston and Cheyne*

Petitioner asks the Court to remand this case because the ALJ did not explicitly reference letters from two of her treating physicians – Drs. Poston and Cheyne. *See* Pet.'s Brief, p. 12 (Docket No. 15). In a December 22, 2014 letter, Dr. Poston writes:

**MEMORANDUM DECISION AND ORDER - 13**

> Mrs. Tracy Ray is a very pleasant 55-7ear-old corrections officer with a long neurologic history. When she was 19 years old she was hospitalized for three months with Guillain-Barré syndrome. Despite this, she has worked as a correction service officer for 30 years. Approximately five years ago she developed a soft tissue plasmacytoma. She underwent neck radiation for this. She has continued to have bilateral arm numbness that radiates down both extremities. She does have degenerative disease both in the cervical and lumbar spine which resulted in a severe and debilitating pain syndrome. this has made her work tasks very difficult. We have performed injections as well as worked with medication management in an attempt to continue to improve her functionality and to alleviate pain symptomatology. Despite aggressive interventional therapy, as well as medication management, the patient's pain syndrome continues to be severe and debilitating. Again, this pain syndrome is both related to her degenerative spine disease as well as to a neuropathic pain condition, which is most likely attributable to her Guillain-Barré. I certainly am not a disability specialist, and feel that it is my goal to improve functionality, but again she has reason for significant dysfunction and pain due to the above-mentioned etiologies.

(AR 492). In an undated letter, Dr. Cheyne similarly writes:

> Tracy Ray is a patient of mine who has significant degenerative disc disease with foraminal stenosis and anterolisthesis. She has had medical retirement denied stating she could do some form of work or employment. Patient is unable to work at the Juvenile Corrections Center due to restraint requirements of standing, sitting, and reading. Patient is unable to do reading and computer work as these put strain on her neck. She has cervical and lumbar degenerative disc disease so unable to sit, stand, squat for variable amounts of time but less than needed for employment. She is currently on disability and has a form for this. I reviewed this form, reviewed reports and filled out disability forms.
>
> At home she has to support her arms when sitting to reduce stress and strain in her neck. Arms go numb during sleep now. They have gone numb other times with about any activity but hasn't happened while driving yet. often this happens in the sitting position.

(AR 493). Respondent concedes that the ALJ did not discuss either of these letters within his April 1, 2015 Decision (and should have), but argues that any error in doing so was harmless. *See* Resp't Brief, p. 10 (Docket No. 16). The Court agrees.

Preliminarily, to the extent Drs. Poston and Cheyne definitively considered Petitioner disabled as of the dates they penned these letters, such opinions on the ultimate issue here (at least as that term is used within the meaning of the Social Security) is neither conclusive nor

**MEMORANDUM DECISION AND ORDER - 14**

binding upon the ALJ. *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989); *see also* SSR 96-5p, *available at* 1996 WL 374183, *2 (the "final responsibility for deciding [whether an individual is 'disabled' under the Social Security Act] . . . is reserved to the Commissioner."); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.").

As such, a closer look at each of these doctor's treating notes (which presumably informed their respective letters) is helpful. Unfortunately, Petitioner does not reference any such substantiating evidence, relying instead on generalized attributions of error to the ALJ. *See, e.g.*, Pet.'s Brief, p. 12 (Docket No. 15) ("The ALJ does not even address the written opinions of these two treating physicians."); Pet.'s Reply Brief, pp. 2-3 (Docket No. 21) ("The omitted statements and opinions from Dr. Cheyne and from Dr. Poston both shed valuable light on her continuing and deteriorating condition. There is harm here to omit these opinions from the final decision."). In its own review of these records, the Court finds no indication that either Dr. Poston or Dr. Cheyne ever attempted to quantify in any useful respect Petitioner's actual physical limitations, except to note her impairments generally (which the ALJ already determined to be severe) alongside her inability to continue working as a correctional officer (which the ALJ also acknowledged). *See supra* (citing (AR 13, 19)). At best, these doctors' opinions are largely redundant with the rest of the record; at worst, they are without foundation.[4]

---

[4] For example, the majority of Dr. Poston's treatment notes reflect procedures for steroid injections and nerve blocks (which frequently improved Petitioner's pain management significantly). *See, e.g.*, (AR 373, 377, 406, 480-82, 516, 521, 535, 544, 548, 555, 558, 565, 572, 575, 582, 585, 588, 591, 595). Likewise, Dr. Cheyne's treatment notes largely reflect unrelated visits dealing with bronchitis, pneumonia, perioral dermatitis, coughing, weight loss, chest congestion, sinus pressure, allergies, etc. *See, e.g.*, (AR 358, 494, 496, 498, 500). To this end, it should be noted that, even though the ALJ may not have considered Drs. Poston's and Cheyne's later-in-time letters, Drs. Vestal and O'Brien (whose opinions the ALJ assigned "great weight" to) themselves gave "great weight" to Dr. Poston, presumably because they considered the unremarkable treatment notes preceding his December 22, 2014 letter. *See* (AR 105, 120).

**MEMORANDUM DECISION AND ORDER - 15**

Lastly, again, even if Drs. Poston's and Cheyne's opinions are read to actually support a disability determination, they are not uncontradicted. *See supra* (referencing Dr. Kelly's opinion that Petitioner "did not have severe cervical spine disease and [did] not have symptomatic spine disease [the] best [he could] tell"; her neuropathy was only "mild to moderate"; she had a "good chance of succeeding with conservative care"; and ultimately there was no "good rationale for her to be considered medically disabled.") (quoting (AR 367)). This record alone constitutes substantial evidence supporting the ALJ's decision. *Cf. Tonapetyan*, 242 F.3d at 1149 (examining doctor's opinion "alone constitutes substantial evidence, because it rests on his own independent examination of" a claimant).

These realities combine to reflect that any error that might arguably exist in this particular setting is harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1040, 1054-55 (9th Cir. 2006) (noting that ALJ commits harmless error when mistake was "nonprejudicial" or "irrelevant" to ultimate disability conclusion). Any oversight by the ALJ is inconsequential to the overall balance of his conclusions. Remand is not appropriate on this basis.

    d.    *Physical Therapist*[5]

In October 2013, a physical therapist from Rexburg Rehabilitation completed a physical capacity evaluation for Petitioner, commenting:

> **Physical Demands According to P.C.E. Evaluation:**
>
> After observation and testing over a period of two days this individual would most likely be successful in very light demand occasional work in environments that allow for frequent changes of position and light upper extremity work that is not speed or detail oriented. As for qualifying rating this individual would be part time light duty.

---

[5] The physical therapist's identity is unknown – his/her signature is illegible. *See* (AR 484-85). Therefore, the ALJ, Petitioner and Respondent simply refer to the fact that this provider is a "physical therapist." *See generally* Pet.'s Brief (Docket No. 15); Resp't Brief (Docket No. 16).

**MEMORANDUM DECISION AND ORDER - 16**

(AR 490). The ALJ agreed that Petitioner is capable of light work, but disagreed that she could only work part-time. *See* (AR 17-18). Petitioner challenges point, arguing that, "[t]o accept a small portion and only a part of the total findings of the full two day examination is improper, without a complete and detailed explanation as to why this was done." Pet.'s Brief, pp. 13-14 (Docket No. 15). Petitioner is mistaken.

At the outset, a physical therapist is not an "acceptable medical source" as defined by the Social Security regulations. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a); *compare with* 20 C.F.R. §§ 404.1513(d), 416.913(d) (discussing "other sources"). ALJs may not discount "other" medical sources without explanation, but less weight may be afforded such medical sources if the ALJ provides "germane" reasons. *See Ghamin v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). It is sufficient if an "ALJ at least noted arguably germane reasons for dismissing [other source] testimony, even if he did not clearly link his determination to those reasons." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Germane reasons include the fact that an opinion is inconsistent with objective medical evidence in the record. *See Bayliss*, 427 F.3d at 1218.

The physical therapist's opinions were considered but ultimately given only "partial weight" by the ALJ, owing to their incongruity with overall medical evidence in the record. *See* (AR 18) ("However, [Petitioner's] pain symptoms do not appear to be as severe and limiting as the claimant purported, based on her reported activities of daily living and reports during examination of only having 'mild' pain. For these reasons, the undersigned assigns only partial weight to the evaluation completed by the therapist from Rexburg Rehabilitation.") (internal citations omitted); *see also supra*. This explanation is sufficiently germane to the physical

**MEMORANDUM DECISION AND ORDER - 17**

therapist's opinions to satisfy the explanation required of the ALJ before discounting "other" medical source opinions.[6]

2.  Substantial Evidence Supports the ALJ's Step-Five Finding

Petitioner contends the ALJ erred in the step-five finding that Petitioner could perform a significant number of jobs in the national economy in two ways: (1) the ALJ's concluded that Petitioner could work in a light duty capacity as a security guard despite her inability to pass POST certification; and (2) the ALJ failed to resolve conflicts between the vocational expert's testimony and DOT data. *See* Pet.'s Brief, pp. 14-15 (Docket No. 15). Both arguments are without merit.

First, the ALJ accepted Petitioner's claimed inability to pass POST certification related to her past work as a correctional officer which, as medium work, exceeded the exertional limits of her RFC. *See* (AR 19-20). However, the security guard position that the vocational expert identified, required *less physical demands* than her past work; hence, the ALJ rationally "did not find convincing evidence that [Petitioner] would not be able to pass the certification requirements [(whatever they may be)] of a [security] guard position, considering the physical requirements are light rather than medium." (AR 20). *See Molina*, 674 F.3d at 1111 (court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."); *Richardson*, 402 U.S. at 401 (finding must be upheld so long as there is "relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion.'").[7]

---

[6] Additionally, it is worth noting the discrepancies between the physical therapist's opinion that Petitioner can perform light work, whereas Drs. Himmler, Poston, and Cheyne arguably indicate otherwise. *See supra*.

[7] The Court acknowledges the potential uncertainty created by the vocational expert's belief that POST certification may be required for security guard jobs. *See* Pet.'s Brief, p. 14 (Docket No. 15) ("The Vocational Expert testified that POST Certification would be required for the only job considered in the Decision, 'guard.'"); *see also* (AR 90). However, despite the

**MEMORANDUM DECISION AND ORDER - 18**

Second, during the hearing, the vocational expert stated that there are at least 400,000 security guard jobs in the national economy. *See* (AR 86). Because Petitioner was never required to carry weapons in her past work, the ALJ and vocational expert concluded that the number of unarmed security guard jobs in the national economy should be reduced by 75% (100,000 security guard jobs in the national economy). *See id.*; *see also* (AR 20). On a regional level, however, the vocational expert stated that he needed to check his resources to determine the number of unarmed security guard jobs in Idaho. *See* (AR 89). That the vocational expert never supplemented the record with this information ignores that, as a matter of law, "the 'significant number of jobs' can be *either* regional jobs (the region where a claimant resides) *or* in several regions of the country (national jobs)." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (emphasis in original) (citing 42 U.S.C. § 423(d)(2)(A)). Therefore, if "*either* of the two numbers [are] 'significant,' then [the court] must uphold the ALJ's decision." *Id.* at 390 (emphasis in original). Petitioner does not dispute that 100,000 jobs in the national economy constitutes a significant number of jobs. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (concluding that 25,000 national jobs is significant).

///

///

---

similarities in titles, Petitioner's past work as a correctional officer (with an alternate title of "guard") under DOT Code 372.667-018 is not the same as a security guard (with an alternate title of "patrol guard") under DOT Code 372.667-034. *See, e.g.*, (AR 82-85) (ALJ discussing with vocational expert about different types of security guards, distinct from those considered to be correctional officers). Stated differently, it would be nonsensical for light duty work to nonetheless require an ability to perform medium duty work by virtue of POST certification. *See* (AR 90) (vocational expert testifying: "Typically, guards are more in terms of checking and protecting property. it is conceivable however, that a guard may have to do some work with restraint of other persons, but it would be probably you know, quite a bit less than a correctional officer would have to do, and I think that's reflected in the physical demand at light rather than medium."). Given this, the vocational expert's testimony can be read in harmony with the ALJ's disability determination here.

**MEMORANDUM DECISION AND ORDER - 19**

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 f.2d at 1549.

The evidence relied upon by the ALJ can reasonably and rationally support the ALJ's well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decision is based on proper legal standards and supported by substantial evidence. Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V. ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED: March 30, 2018

Ronald E. Bush
Chief U.S. Magistrate Judge